We'll call the last of the cases we have this morning, Fernandez v. The School Board of Miami-Dade County. We'll call the last of the cases we have this morning, Fernandez v. The School Board of Miami-Dade County. Good morning. Good morning, Your Honors. Good morning, my name is Craig Frager and I represent appellants Dr. Alberto Fernandez and Mr. Henny Cristobal. The council table with me is co-counsel Thomas Elfers. May it please the court, this is an action against the defendant Pelley School District, Miami-Dade County for unlawful retaliation against the plaintiff appellants Fernandez and Cristobal for exercising their right to free speech in violation of the First Amendment to the United States Constitution. The district court under the authority of the Supreme Court case of Garcetti v. Zabalos granted summary judgment against Fernandez and Cristobal on the sole ground that their speech was employee speech and not citizen protection. The district court cited as determinative the employee's written job descriptions for principal and assistant principal. First and foremost, it is impossible to reconcile the lower court's application of Garcetti with Florida's anti-charter school retaliation provision. You mentioned the job description. Yes, sir. Looking at language from their job description. Yes, sir. It says one of his responsibilities is providing, quote, educational leadership by developing and implementing plans that effectively utilize the personal and material resources necessary to produce a quality instructional program that is responsive to the needs of the identified student population. Correct. If we look at that job description as did the district judge in this case and we conclude that their efforts, Mr. Fernandez and Mr. Cristobal's efforts to convert the school into a charter school ordinarily falls within the scope of their duties because it was linked to their leadership of the school, we would have to affirm the district court's decision, wouldn't we? No, Your Honor. There's several reasons why that's not correct. First of all, the Supreme Court cautioned that you should not give effect to overbroad job descriptions and, in fact, job descriptions do not control. The court said rather you rely on a practical inquiry. The court did not accomplish a practical inquiry in this case. Well, the court didn't look just at the job description. The court also looked at the fact that the speech occurred at the school, during school hours, using school resources. Mr. Fernandez. Garcetti says that all of those things are non-determinatives, sir. None of these are factors? Garcetti says that those things are to be expected when an employee is talking about things that go on, that touch on their job or what knowledge they've acquired in the course of their employment. Didn't the principal also direct other staff, call meetings, organize faculty agenda? He asked for help and assistance as he was entitled to do. The allegations against him that the school board brought and argued with the State of Florida Department of Education, and the charges they were brought against disciplinarily, were that these were not within their ordinary job description. In fact, they were not part of their job at all and they were accused of abuse of school resources. We're not here on the retaliation claim, though, right? We're just here on the First Amendment claim. Well, it brings up the issue of judicial estoppel and the fact that they're flip-flopping, Your Honor, today. But in addition, I'd like to go back to the fact that Garcetti is being misapplied in this case because this is not speech that the employer contracted for, can direct, or control. It's not something that is part of the employer's view of the subject. What are we supposed to do with the Florida statute? Right. Well, if I may. Let me finish my question first, if I might. I'm referring to section 1002.33. Correct. That statute provides, and I quote, that an application for a conversion of a charter school shall be made by the district school board, the principal, teachers, parents, and or the school advisory council. Thus, Florida law itself expressly recognizes that the principal is one of five entities that can actually commence the process of seeking a conversion from a public school to a charter school. Isn't that a powerful indicia that for a principal to have exercised his statutory authority under 1002.33 falls squarely within the ambit of his public duties as a principal? No, Your Honor, because he's wearing a different hat then. There's a distinction between principal as a job description and job duties and principal as a designation as a constituency that has a vested interest in this matter. Garcetti acknowledges that public employees have particular expertise that's helpful in the public discourse. The Florida legislature has just recognized that here by including principals, teachers, the CSAC, which is like a parent teacher association. It didn't just list them. Parents. It gave us a determinate list of who could seek conversion. Right, but understand that that... And conversion can only be sought by the principal or a teacher in the school or a parent who has a child in that school or the school advisory council for that school. That's the universe of possibility. That for conversion, yes, Your Honor. And what I would... That's what Fernandez did here. He sought conversion, did he not? He was trying to facilitate that with the CSAC, but that's a discretionary function of the principal as designated by the Florida legislature. I agree that it's discretionary in the sense that he's not obliged to seek and most principals do not seek to convert a public school into a charter school, but that is a function that falls squarely within his can-ask principle as opposed to a private citizen. Except there's a distinction between principal as school board employee and principal acting under this statute. They're wearing different hats and the proof of that is that the distinction of it being discretionary is reinforced by the anti-retaliation provision. Let me ask the question differently. Could I as a public citizen in Dade County who pays taxes in Dade County say, I believe... Killian High School in South Dade County ought to be converted from a public school into a charter school. I don't have a child who goes there anymore. I'm not a teacher. I'm not a principal. I'm certainly not part of the school advisory board. Would I have any lawful authority to perfect or to put the ball in motion to convert from a charter school to a public school? No, you'd have to rely on subsection 3A for an application for a new charter school, which can be made by any individual, teachers, parents, groups of individuals, municipalities, etc. For a new charter school? New charter school. Not to convert an existing public school? Not to convert an existing school. So to convert an existing school to a charter school, the statute tells us, and we're certainly bound by it, that there are only five entities that can do it, one of which is the principal. Correct. So he's not speaking as John Q. Citizen, a private citizen, when he's doing that, is he? Correct, but he's also not speaking as an employee of Miami-Dade County Public Schools. So he's speaking as principal. He's got that designation, but he's not speaking on behalf of or part of the charter as... So he's acting as principal, but he's not really acting as principal. I'm not sure. It's almost metaphysical. I'm having trouble understanding this. Well, let's say volunteers for a committee on the bar have to be attorneys with a law firm, but if they do volunteer, they're doing that in their own discretion. They're not acting as employees of the law firm. In this case, it's clear that the principal is not acting as an employee of Miami-Dade County Public Schools because of the anti-charter school retaliation provision, 1002.33, subsection 4A, which says that no district school board or district school board employee who has control over personnel actions shall take unlawful reprisal against another district school board employee because that employee is either directly or indirectly involved with an application to establish a charter school. That removes the basis for Garcetti altogether in this case. That removes the participation of a principal as an employee. Let me ask you a slightly different question, holding Garcetti aside. Sure. Why doesn't DeAngelo squarely resolve this case? Why isn't that on all fours with this case, whether it was properly resolved or not? Am I not bound? It doesn't look to me like it gets much closer in precedent. No, Your Honor. I don't believe you're bound by DeAngelo for several reasons. First of all, DeAngelo is distinguishable in that the plaintiff in that case stated his duties as principal of Polk County Public School included pursuing the conversion of that school to a charter school. Fernandez and Cristobal have made no such admission. In this case, Dr. Fernandez referenced the principal's role under the Florida Charter School statute, which is an independent source of rights. Remember that in Lane... Didn't Fernandez argue to the school district's associate superintendent that an application for charter status falls within the official duties of a school principal under Florida statute? That's not in the record? That was a layman's interpretation of the Florida statute. And what he's talking about as far as principal's duties, he's talking about the discretionary duty under the statute, not his duty qua employee. Again, he's wearing a different hat when he's advocating for charter school under a Florida statute that the legislature has given him as an independent power of authority and is discretionary on his part versus his duties as an employee where an employee can control him and tell him what to do. Again, the anti-retaliation provision makes clear this is not speech within the school district's control. The anti-retaliation provision doesn't say it's not speech. The state of Florida is free to protect certain actions or certain speech. That doesn't take it out of or that doesn't necessarily give it First Amendment protection. It's a different analysis of whether certain speech or action falls within that anti-retaliation provision, which protects them and apparently got their job back. But it's a separate question of whether it is protected speech under the First Amendment. Well, there's no distinction in this case because all of the speech went to involvement with the application to establish a charter school. And the anti-retaliation provision is very broad. It says any involvement either directly or indirectly. So speech in terms of, for example, calling a meeting to get people together, speech in terms of giving people the pros and cons, investigating the good points and bad points of charter school, bringing in a guest speaker to talk about the legal aspects, which were all things that my client got in trouble for doing, are all under the ambit of directly or indirectly being involved in the application to establish a charter school. How is a principal not acting in his role of principal, employee of the school board given the title of principal only by the school board? How is he not acting in that capacity when he calls a staff meeting, a faculty meeting, that requires all of his faculty to be present? I mean, you were saying he's wearing different hats. How is he not squarely within his school board employee principal hat when he calls that meeting where he advocated for the charter school? I don't believe that those meetings were mandatory. But I think that everything that he did in these cases was voluntary. And the meetings were after school hours with the CSAC and any teachers who wanted to attend. Who can call a faculty meeting other than the principal or the vice principal? I don't know that they were called as faculty meetings that were mandatory. And if they were called, they were not called to discuss school business. And again, this is outside of the scope of his ordinary employment or job duties. He's not employed to speak on the issue. He could not possibly be employed to issue a speech on the issue of charter school conversion based on the anti-retaliation provision because, again, the employer has no control. Remember Garcetti, OK, the rationale for Garcetti. The way I interpret that retaliation provision is that he could not be retaliated against if, let's say, for example, he just appeared at a school board meeting and argued in favor of converting NEVA to a to a charter school. Not within school hours, not using resources, not putting pressure on teachers to support it, but argued he could do that at a school board meeting. Well, the Florida Department of Education ruled that all of his activities were covered and protected. Everything that they've accused him of doing, calling meetings during the school day, using school resources, using the school email system. The Florida Department of Education, which should be given at least some discretion as to knowing what the education code is about, said that that's retaliation under the statute. That's binding on the defendant and that's been fully litigated. Did your client testify about why he was seeking the conversion? He, I believe, mentioned that it was something that he thought would benefit the children and that he thought that... He wanted to improve the quality of education at his school, right? Right. But that's, again, that's an amorphous concept. It may be amorphous, but it was certainly one of the controlling issues in D'Angelo. I mean, D'Angelo went off on two things. One, there was a Florida statute that governed the establishment of charter schools and it gave the power to principals, among others, to seek conversion. And two, D'Angelo admitted at trial that although charter conversion was not one of his assigned duties, he engaged in the effort in order to, quote, improve the quality of education at his school, which he testified was his number one duty in his job as a principal. Do we not have exactly that in this case? That is to say, your client saying as principal, I was interested in improving the quality of education for my students at my school and I believed that a conversion from public to charter would accomplish that task. Doesn't he say that? He does say that, your honor, but I believe that... Isn't that on all fours with D'Angelo? Well, I don't believe so for a couple of reasons. One is that he never said that it was part of his job duties. He said that it was his role under the Florida statute. He also, in D'Angelo, the defendant's school board consistently maintained plaintiff's duties as principal, included pursuing the conversion. Where here, the school board has taken one position before the state and another before this court. Also, D'Angelo didn't consider its ruling in light of the Florida charter school retaliation provision. They never mentioned it, and I think that that was simply overlooked and would have changed the outcome. And more importantly, I think D'Angelo's been abrogated. I don't think this court... I what? Well, D'Angelo, if you look at D'Angelo... Is there any... Remember, I'm bound by the prior precedent of my court unless either we reverse it en banc, we haven't done that, or the Supreme Court squarely and directly rejects the holding, and certainly Lane didn't do that. Well, D'Angelo is part of the 11th Circuit precedent that broadened Garcetti, and I believe should be re-evaluated in light of Lane v. Franks. Maybe it should be, but I'm still bound by it. Well, but it has been re-evaluated. Please, just let me finish, and then you can help me. It seems to me I'm bound by D'Angelo unless you can show me that subsequent Supreme Court precedent has so gutted, has so eviscerated the holding of D'Angelo as to leave nothing left. It's not enough to say that they put a new spin on Garcetti, which they do, in a very different context. After all, in Lane we're talking about a subpoena requiring somebody to testify before a grand jury, which is an obligation falling to any citizen. It has nothing to do with being the principal or anything else. If I'm called to testify, I'm obliged to answer that summons to do so. You follow what I'm sort of getting at? Yes. So help me with this. Sure, sure. I don't believe that Lane could be read that narrow. Remember that Lane was a reversal of the Eleventh Circuit where they were basically taking Garcetti too far. And if you look at, for example, if you read the court's discussion... Right, but Lane did not say D'Angelo took Garcetti too far, and it had no occasion to because it wasn't inquiring about the conduct of a principal to change a charter school, but of a public official who was subpoenaed to testify before a grand jury. I understand, Your Honor. I do have an argument for this, if you'd let me... I would. I'd be happy to hear it. ...follow the steps, okay? D'Angelo's part of Eleventh Circuit precedent that broadened Garcetti prior to the Supreme Court's decision in Lane. If one reads the court's discussion in Abderrahman v. Walker, including its discussion of the prior precedent, and then you look at Judge Barkett's dissent in Abderrahman, and then compare that with Lane where the Eleventh Circuit, relying on Abderrahman, found the speech to be employee speech and was reversed, where you end up is where the Middle District of Alabama did in the case of Kirkpatrick v. Geneva County Board of Education. That's a slip of the penny on that side in our reply brief. In that case, they said that Abderrahman has been abrogated in part by Lane. And similar to what happened in Abderrahman in D'Angelo, what happened in the case at itself was something that the employer could not control or command without running foul of the Anti-Retaliation Statute. Lane said that the ... I'll be with you in a second. Okay. Lane said that the critical question under study is whether the speech itself is ordinarily within the scope of the employee's duties. Therefore, the focus is, first of all, that the employee's duties must be speech itself, speech qua speech. For example, Sobalos couldn't complain about being disciplined for the content of his memos because he didn't control the content. His job was to write what was acceptable to his supervisor. That couldn't happen in this case. The employer could not command my clients to write something or say something about charter school conversion that they personally didn't believe because ... I understand. I think we have the thrust of your argument. Okay. The second point, though ... Now, if you want to say any more, you're going to have to eat into your rebuttal time, counsel. You've saved two minutes for rebuttal. We've already gone seven and a half minutes over. I'm sorry. Okay. The other part is that speech must be about ordinary job duties, not something more unusual or out of the ordinary, because Garcetti's supposed to be a narrow exception to the First Amendment. Charter school conversion is an anomaly. There's never been one in Miami Dade County. I think there's been one in the entire state. Speaking on it, certainly, is not something that's ordinary part of a principal's job duties, at least in Miami Dade County. According to what I said was as far as the abrogation of Abdur Rahman, I believe that that could be extended to D'Angelo, because D'Angelo also did not consider these factors which the court made Plainware primary. Should we give him primacy? To the extent that it's your belief that Abdur Rahman and D'Angelo have somehow been abrogated, how do you account for the fact that the Eleventh Circuit, in published opinions twice since Lane, has cited to D'Angelo and Abdur Rahman approvingly, both in the Alves case and in the Moss case, the Eleventh Circuit directly relied on that authority? It doesn't appear that the Eleventh Circuit believes that Lane abdicated. I said in part. I said in part. I think that the distinction is that you have to go back to focusing on, again, whether the employer needs to control the speech to control its employment situation. Remember that Garcetti said that its entire rationale is that government employees need significant degree of control over an employee's words and actions. They don't have the right to control over the employee's words and actions in this case. So the very premise for Garcetti doesn't exist. There's no legitimate government interest in controlling my client's speech, because there's an anti-retaliation provision that focuses on ordinary jobs. We went from Garcetti, which talked about professional responsibilities, to Lane, where that morphed into ordinary job duties. The focus was clearly narrowed, and I think the purpose is because... I think you're going to have to bring your remarks to a close. I will, Your Honor. I think the... No, no, I think you have to bring them to a close now. Thank you. We'll give you your rebuttal time. Thank you, Your Honor. May it please the court, Luis Garcetti on behalf of the School Board of Miami-Dade County. Along with me today is Ms. Sarah Markin, who assisted in the case below before the district court judge. I believe this court is correct. Neither D'Angelo nor Abdulrahman have been abrogated. It was cited, as Judge Howard correctly pointed out, in Moss and in Alvis, which I believe is an opinion that was written by D'Angelo in this case. Let me cite one to you and ask you to help me with it. It seems to me perhaps the most salient difference is that in this case, several school district officials concluded in disciplinary memoranda that converting Neva King into charter school was not part of Fernandez and Cristobal's official duties. And they point to six instances in which the school district or their officials claimed that charter conversion was not part of their official duties. That's correct, Your Honor. The school district officials... Now, it's true that I'm not bound by their opinion. It sounds to me like a pretty salient piece of evidence that suggests that school board officials didn't think Fernandez and Cristobal were acting in the course of their official duties when they sought to sanction them. Correct, Your Honor. That's what they thought at that time. And that's what happened in the administrative proceeding that appeared... They went to an administrative law judge before the Division of Administrative Hearings. And that's different than what we had in D'Angelo, is it not? Yes, I believe, as the court has argued before, in the administrative proceeding, we're looking at whether there was an unlawful reprisal action against these individuals because they had engaged and had engaged in activities to convert the school into a charter school. And the state statute protected them from engaging in those activities. The school districts believed was that the activities that they were doing were not part of what their job was supposed to do, furthering the goals of the district at that school. But they were incorrect in that assumption. And the administrative law judge found that by necessity, because the statute allows a principal to file an application for conversion of a charter school, it was within his assigned, his official... But you understand why I raise it. Goldman, quote, Dr. Fernandez and Mr. Cristobal were not authorized to utilize district time and resources to research, plan, and direct staff to present and vote to convert the school into a charter school. Question, rascal. During the conference, Fernandez was told this question, converting Neva King Cooper Educational Center into a charter conversion was not part of his official duties. Was he not? Yes, among other things. And then it goes on, you can take the testimony of Milagros Fornell, the school board, and states during her deposition that the charter conversion was, quote, not in Fernandez's job description. Correct, Your Honor. And that was their assessment. He says you want it both ways. He says, for purposes of discipline, you want to say they acted beyond their power. They were not speaking as officials of the school board. But now, for purposes of this lawsuit, by God, they fall right in the ambit of public employees, and you can't have it both ways. Well, there are two separate cases, Your Honor. One case is an unlawful reprisal statute case in state court. The other one is whether you have a First Amendment right in federal court to be protected. No question the context is different. But the position taken is remarkably different. It is, Your Honor, and we concede that it is because, as we stated before, that was going, when the administrative hearing was held, which was a full five-day evidentiary hearing, the district's position was that they should not have been engaging in these activities during work hours because the district was paying for these activities. The judge ruled that that was incorrect, that it was part of their official duties, and that this was part, particularly because the statute said that a school principal can engage in this. And this school principal did exactly what the principal did in Albuquerque. What happened with the disciplinary proceeding? At the disciplinary proceeding, there was a five-day hearing. No, I mean at the end of the rainbow. What was the ruling? Were these two folks disciplined for exercising the authority that the Florida legislature gave them? No, Your Honor, they were not. The court determined that they were protected under the statute from their activities, and they never lost their jobs. They actually ended up, one of the reasons when you look at the administrative law judge's finding, that the only remedy that he gave them was to maintain the current positions and titles that they have, and awarded the principal $10,000 for bonuses that he had missed during the time that he was at an alternative assignment, which is a typical thing that the school district does when individuals are under investigation. Because the only retaliation that is alleged in the lower court decision, actually in the administrative proceeding, was that they were retaliated against because they were transferred to an alternative site, and they were investigated for engaging in activities to convert the school. When we come to this court, we're looking at it from a First Amendment framework. Were they speaking as employees when they were engaging in these activities for the charter conversion, or were they speaking as citizens? As this court has already indicated, that is pretty clear in the DeAngelo case. You couldn't have a case that's clearer on the facts than DeAngelo. To that point, let me ask you, following up on what Judge Marcus was saying, the district judge resolved this case on a motion for summary judgment, right? Correct. Why wouldn't the testimony that was just read by Judge Marcus, at a minimum, create an issue of fact for purposes of applying the Lane test of whether these actions were within their ordinary job duties? As the court noted in the opinion entered by the district court judge, even though the employer may see these duties as in conflict with their mission or in conflict with the assigned duties of these employees, that doesn't mean that it's still not employee speech for purposes of First Amendment protection. They were citing to the Alvarez opinion of this court, as president, which there it specifically says, even if it's contrary, even if it's not mandated by your employee, it could still be employee speech. In this context, based upon the acts of the principal and the assistant principal, it was clearly employee speech. I mean, they were setting faculty meetings to tell the faculty and staff the benefits of converting their school. This was done during school hours. The only person that can set a faculty meeting is the school principal in his capacity and authority as a school principal. They invited a lawyer to come in and present to their faculty and staff about the benefits of having a conversion. Mr. Frager relies pretty heavily upon the Supreme Court's decision in Lane v. Franks. And this is the important language. It says, the critical question under Garcetti is whether the speech at issue is itself ordinarily within the scope of an employee's duties, not merely whether it merely concerns those duties. So, I mean, to accept your argument, we would have to say that advocating to convert a school to a charter school ordinarily falls within a principal's duties? Well, at the end of it, this court said that it was part of its duty by necessity because the state statute said that he could file an application for conversion of a charter school. But our opinion would have to say that advocating to convert it to a charter school is a duty that ordinarily falls within the scope of his duties. Excuse me, Your Honor. I think you could say that because it doesn't just relate or concern his duties. It actually is part of what he was doing in his capacity as a principal. If you look at the memorandums that he issued, all the memorandums that the principal issued in this case, and they're part of the record, and they're also part of this motion for summary judgment that was filed by the school board, he was asking for additional funding for that school, and that's why he wanted to convert that school. So definitely he was doing it within the authority and the capacity of the principal and also pursuant to his official duties, which is what Garcetti said and what Lane did not change. I believe, Judge Wilson, that you gave an exact recitation of the impact of Lane on the Garcetti and his progeny and the presidents in this 11th Circuit. And in that regard, you said that the only thing that Lane did was to say that when an employee is compelled to testify in a court proceeding, that that is definitely not within the scope of his duties. And particularly when his employment did not involve testifying in court proceedings. So I think we cannot diverge from that precedent that's there, and this was in the Alvis opinion. And in addition to that, that the Angelo case is so clear in establishing precedent that is controlling on this circuit, that you would have to somewhat say that that's no longer a good precedent because of Lane. And I don't think Lane, as this court stated in Alvis, Lane should be narrowly applied, because it should only be applied in that context where it is clear that it was completely outside of the scope of the employee's responsibilities. We cannot say that the principals and the assistant principals' activities to convert the school were outside of the scope. The only way that he could have those faculty meetings is as an authority of the principal. The memorandums that he issued were all under the title of the principal. He was requesting documents from the chief financial officer of the district in order to say how he could build the budget for that school when it is converted. It had nothing, he wasn't speaking as a public citizen. He was speaking as his capacity as the principal of that school, and furthermore, if he were to continue as the principal of the converted charter school, how much funds he would have to serve his- The reason that I ask that question is because I construe ordinary duties as duties that occur with some sense of regularity, and advocating to convert a school to a charter school was not a principle that would take place with any sense of regularity. Well, regularity in the duties, I don't think, automatically precludes whether it is considered- The regularity, let me just rephrase it. The regularity of how many times or how often or chronically that duty actually appears doesn't actually mean, construes it to be an ordinary duty or not. Just because something doesn't happen within the duties of an individual doesn't mean they're not part of his ordinary duties. You don't have to prepare a budget every day during the process of being a school principal, but at some point you may have to. That means it's still within the ordinary duties of a school principal. But the regularity would not, and there is no case law that says that the regularity of those duties is what mandates whether it's within an ordinary job duty. In this case, I would submit to the court that it is part of his ordinary It's something that he can do. And as in the Alvis case and in the Moss case, this court said that just because a duty is not mandated or even allowed by the employer doesn't mean that it is not part of its ordinary duties. The same goes to whether the district took a position in the lower court case that said that these were not part of his duties. And by the way, the judicial estoppel argument was first raised in a reply brief in this case. It was never argued to district court judge. So in that sense, it should also not be considered as prevailing in this matter. I think the court is clear in terms of what the controlling president in this case and how DeAngelo is so much similar to the facts of this case. Because even in DeAngelo, the motivation that the principal states in the opinion for wanting to convert a school is that he wanted to get additional funding in order to better serve his students. Same motivation and reasons given by the appellants in this case. They were using their authority, using their position. All of these activities they took were pursuant to their professional responsibilities and within the scope of their employment. It cannot be said that for some reason that these activities were not or do not constitute employee speech for purposes of First Amendment. And because they are employee speech, they're not any discipline or any activity. In this case, they were not terminated or actually suffered any severe discipline except that they claimed that the transfer and the investigation was disciplined. Even if that were the case, and in most of the First Amendment cases under Garcetti and even after Lane, all dealt with employees that were retaliated against and the court found that even in spite of the retaliation or any disciplinary action, they were not protected by the First Amendment. And I don't think this court should recede from those presidents and it should go and continue to abide, continue to uphold D'Angelo and the other cases that followed, Alves and Moss, which have already been indicated by this court. If there are any other questions, I'll be more than happy to. No, thank you very much. Thank you. Mr. Frager, you've got the last word. Thank you, Your Honor. I appreciate it. As far as the taking different positions in one form and the other, the district court gave that short shrift saying that it was the subjective belief of various individuals. That's not correct. That was the testimony, factual testimony of the supervisors of my clients. Again, in the employer-employee relationship, the employer through its supervisors tells the employee what their job is. If the supervisor testified, your job was not to convert to a char school. That's a fact in the record that they testified to as in their capacity as the supervisor, these people, they're up there. Did the ALJ, the administrative judge, reject that? The administrative judge said that he believed that he, I'm sorry, the administrative judge, I believe, I didn't represent the clients. No, I understand that. So you have me at a disadvantage, but I believe it was accepted that it was not part of their job responsibility. I thought what the administrative judge said is in no sense controlling on anything we say, but I thought the administrative judge said that the seeking charter conversion fell within the ambit of his statute of responsibilities. No, I don't believe that, Your Honor. I believe that it was strictly on the retaliation aspect. And also, you know, they're trying to pass that off as some mistake or some misapprehension. These are high-level, I mean, district-level, superintendent-level supervisors of these schools telling the, it's telling the hearing officer what they know for a fact the school principal's job to be. It can't be disregarded. And Mr. Garcia was the lawyer arguing the opposite for the state and now is arguing it here. So he knows very well that he argued two different things. As far as the independent obligation, one of the things Lane made clear is there can be independent obligations besides employee obligation, like the obligation to testify truthfully. This is another area where there's an independent source of obligation. The state statute is an independent obligation. It allows the principal to use his inside information, as it were, to benefit the population as far as charter school, like any employee who has inside information, for example, as a whistleblower benefits from that position, but isn't doing so pursuant to his job as an employee. He's looking at the best interest of students as a professional, but not as an employee of the school board, because what he's doing is actually against the school district's interest. He's trying to remove students, the full-time equivalency, the property plan equipment, the teachers, the staff, everything from the control of the school board. I mean, it's beyond belief that you would say that that's within the ordinary, that that speech is within the ordinary job duties of the principal. To say that the idea that the speech was made in the course of my client's ordinary job duties is absurd to a sailor. If he was at a school board meeting and was asked about conversion of the charter school of Neva King to a charter school and he spoke against it, would that be within his ordinary job duties? No, it would be something that he has the right to do independent of his job duties, and by the same token, the school board couldn't tell him what to say one way or the other when he was passed the microphone. What if the school board was, I mean, in this case, the school board definitely has a policy against charter school conversion. There's no secret to that and there's no wonder as to why. But let's say, for example, the school board is okay with charter schools and they want him to say, yeah, I like charter schools, and he takes the microphone and says, I don't like charter schools. Again, the anti-retaliation provision says he can't be retaliated against. If there's a petition and he's involved in that directly or indirectly, if he says, I'm against the petition or I'm for the petition, that's totally an independent right separate from his ordinary job duties. Speaking of that is in no way an ordinary job duty. And the other thing as far as the outcome, you were curious about the outcome. In fact, I'd have a minute to talk about that. Just tell me in one sentence, counsel, because we've really gone way over. I appreciate it. It's not part of the record evidence, but I was just asking. The assistant principal put one in the bus warehouse, put the other in the stores warehouse, basically put them in exile. The outcome of the administrative action, they did not get reinstatement to Neva King Cooper. That killed the charter school movement at that school. They were reassigned to other schools. Were they reinstated as principal and assistant principal? But the assistant principal was told point blank, you're not going anywhere in this district. Your career is over. And he wound up resigning. And the principal wound up not going back to Neva King Cooper school that he put like 15 years of blood, sweat, and tears into. And again, the chilling effect was accomplished. That's the thing I want to leave you with. I think we have your case. Thanks very much. And thank you. This court will be in recess until 9 a.m. tomorrow morning.